IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 8, 2005

## SHIRLEY MASON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 9548    Lee Russell, Judge**

---

**No. M2004-00392-CCA-R3-PC - Filed March 15, 2005**

---

The petitioner, Shirley Mason, appeals as of right the dismissal of her petition for post-conviction relief by the Bedford County Circuit Court. She seeks relief from her conviction for delivering less than one-half gram of cocaine and resulting sentence of eight years in confinement. The petitioner contends that she received the ineffective assistance of counsel which caused her to enter an involuntary guilty plea. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. C. MCLIN, JJ., joined.

N. Andy Myrick, Jr., Fayetteville, Tennessee (on appeal); Hayley E. Fults, Shelbyville, Tennessee (on brief only); and Richard A. Cawley, Shelbyville, Tennessee (at trial), for the appellant, Shirley Mason.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William Michael McCown, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner was initially indicted for the sale of less than one-half gram of cocaine, a Class C felony. The jury trial resulted in a hung jury, and the trial court declared a mistrial. The state subsequently reindicted the petitioner on alternative theories of sale and delivery of less than one-half gram of cocaine. A new trial date was set, but before the trial began, the petitioner entered a guilty plea to the delivery charge with the state dismissing the sale charge. Following a sentencing hearing, the trial court sentenced the petitioner to eight years as a Range II, multiple offender. She appealed, and this court affirmed the sentence imposed by the trial court. State v. Shirley Mason, No. M2002-00121-CCA-R3-CD, Bedford County (Tenn. Crim. App. Dec. 6, 2002), perm. app. denied (Tenn. Apr. 28, 2003).

The petitioner filed a petition for post-conviction relief alleging that she received the ineffective assistance of counsel during the pendency of her case and during the plea proceedings thereby rendering her guilty plea involuntary and unknowing. At the post-conviction hearing, the petitioner's trial attorney testified that he represented her at the trial which resulted in a mistrial. He said the proof presented at trial showed the following: A confidential informant came to the petitioner's house looking for her boyfriend. The informant did not see the boyfriend, but his car was parked in front of the house. Instead, the informant spoke with the petitioner about purchasing some crack cocaine. The petitioner went into the house, returned with some crack cocaine, and the informant gave her money in exchange for the cocaine.

The attorney testified that following the mistrial, the state obtained a superseding indictment charging the petitioner with both sale and delivery. He said that the petitioner entered a plea of not guilty and that they met once or twice thereafter to discuss the new charges and the changes in her case. He said the petitioner understood she would have had "problems" with the indictment charging her with delivery, given the strength of the state's case. He said she informed him that she wanted a sentencing hearing in order to "state her case" to the trial court and receive an alternative sentence. He said she was a Range II, multiple offender, which carried a sentence range of six to ten years at thirty-five percent release eligibility. He said he advised her that, in his opinion, the best course of action given the evidence against her was to plead guilty without an agreement as to the sentence and present her arguments for alternative sentencing to the trial court. He said he informed her of the advantages and disadvantages of pleading guilty and gave her the plea agreement to read. Regarding whether she read it, he said he was not certain but his standard procedure is to give his clients the plea agreement and ask afterward whether they have questions. He said that he discussed the pending sentencing hearing with her and that he gave her a copy of the presentence report. He said he did not recall the petitioner indicating to him that she wanted another jury trial.

On cross-examination, the attorney said that the state's case was strengthened by amending the charge to include delivery. He said that the petitioner realized the best thing to do was to plead guilty and that she knew it was her decision. He said he would have tried the case if she had asked to go to trial. He said her prior criminal record included three felony drug offenses and a number of misdemeanors. He said he did not assure her that she would receive any form of alternative sentencing. He said he believed that she entered her guilty plea knowingly and that she knew what rights she was waiving. He said that she understood that the trial judge would decide her sentence, that it might involve incarceration, and that she could receive a sentence up to ten years at thirty-five percent release eligibility.

The petitioner testified that she recalled discussing the second indictment with her attorney but that she did not recall him explaining the elements of the delivery offense. She said that when she informed him she wanted a jury trial, he asked if she was certain. She said that he advised her to plead guilty but that he also told her the decision whether to go to trial was hers. She said that when she decided she wanted a jury trial, he asked her again if she was certain. She said he asked her the same question again and again until she finally agreed to plead guilty. She said his repeated questions and a conversation with his "boss" made her change her mind and plead guilty. She said

-2-

his boss told her that it would be best to enter into a plea agreement because "taking it back to trial would make the Judge mad" or she would receive a longer sentence and things would be worse for her. She said that her attorney did not explain to her what was meant by "plead open." She said that she was happy with her attorney's representation at trial and that she trusted him to do what was best for her until she discovered he believed she was guilty. She said that he gave her a copy of the plea agreement form to read and that she read it but did not completely understand it. She said that her attorney attempted to explain the parts she did not understand but that she still did not understand. She admitted not asking him any questions. She said that her attorney told her she had a good chance of being placed on probation and that she expected a sentence involving probation. She said she did not recall receiving a copy of the presentence report. She said the trial judge asked her at the plea hearing if her attorney spoke with her and if she understood what was happening. She said that she replied affirmatively but, in truth, did not understand.

On cross-examination, the petitioner admitted that she knew the judge would decide her sentence, that the sentence was not a part of the plea agreement, that the issue of probation was also the judge's decision, and that if she chose not to plead guilty, she could have a second jury trial. She admitted that she was aware her sentence length could be between six and ten years and that she could go to prison. She said, though, that she did not know she was "going to get all of this time." She also admitted that the only pressure placed on her to plead guilty came from her attorney and that he told her they would go to trial if that was what she wanted. She said that her attorney told her if she did not like the sentence she received, she could appeal it but that he did not explain the appeal process. She admitted her main complaint was that her attorney repeatedly asked her whether she wanted to plead guilty until she finally agreed. She said that but for his questioning of her on this issue, she would not have pled guilty and would have gone to trial. She said that if she had known she would not receive a sentence of probation, she would not have accepted the plea agreement.

The trial court denied the petitioner relief. It found the attorney's testimony "entirely credible." It also found that his performance at trial suggested more than adequate preparation and communication with the petitioner. The trial court noted that the jurors who could not vote for conviction were concerned only about the sale element of the offense, which the state cured by reindicting on delivery. The trial court also found that the petitioner's attorney did not lead her to believe she would receive alternative sentencing. Based upon the testimony of the petitioner and the attorney and the transcript of the plea acceptance hearing, the trial court found that the petitioner knew how alternative sentencing would be decided and knew it was not guaranteed. The trial court found that the petitioner also understood the consequences of pleading without a sentence agreement and that her attorney did not coerce her into pleading guilty. The trial court concluded that the petitioner received the effective assistance of counsel and that her guilty plea was knowing and voluntary with full understanding of the direct and relevant collateral consequences of the plea.

## ANALYSIS

On appeal, the petitioner contends that the trial court erred by dismissing her petition. She contends that she received the ineffective assistance of counsel because her attorney pressured her

into pleading guilty which caused her guilty plea to be unknowing and involuntary. The state contends that the petitioner received the effective assistance of counsel and that her guilty plea was knowing and voluntary. We agree with the state.

When a claim of ineffective assistance of counsel is made, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). To satisfy the requirement of prejudice when the petitioner entered guilty pleas, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, she would not have pled guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The burden was on the petitioner in the trial court to prove by clear and convincing evidence the factual allegations that would entitle her to relief. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). Because the trial court's conclusions regarding the effectiveness of counsel involve mixed questions of law and fact, our review is de novo with no presumption of correctness.

In the present case, the record before us contains a transcript of the post-conviction hearing but does not contain a transcript of the plea acceptance hearing. A party seeking appellate review has a duty to prepare a record which conveys a fair, accurate and complete account of what occurred with respect to the issues forming the basis of the appeal. State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993); see T.R.A.P 24(b). In the absence of an adequate record on appeal, the reviewing court must presume that the trial court's rulings were supported by sufficient evidence. State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Our review is limited to the evidence presented at the post-conviction hearing.

At the post-conviction hearing, the attorney testified that he represented the petitioner during her trial and through the plea proceeding. He said that he met with her and discussed whether she should plead guilty or go to trial on the charge of delivering less than one-half gram of cocaine. He said the state's case was strengthened by amending the charge to include delivery. He said that he recommended she plead guilty but that she knew whether they went to trial was her decision. He said if she had wanted to go to trial, that is what they would have done, but he did not recall the petitioner indicating to him that she wanted another jury trial. He said that he believed she entered her guilty plea knowingly and that he did not assure her she would receive any form of alternative

sentencing. The trial court found the attorney's testimony credible. It also found that the petitioner understood the consequences of pleading open and that her attorney did not coerce her into pleading guilty. The record does not preponderate against the trial court's findings. The petitioner failed to prove her allegations by clear and convincing evidence.

The petitioner also argues that her attorney's boss threatened her by suggesting the trial judge would get mad if she went to trial and that her attorney's refusal to accept her decision to go to trial gave her no course of action other than pleading guilty. We believe the record does not support either argument. Instead, it indicates that the petitioner was unhappy with the sentence she received. We conclude that the petitioner did not receive the ineffective assistance of counsel and that her guilty pleas were knowing and voluntary.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE